ARTHUR H. NOBLE, Plaintiff and Appellee, *v.* JOAQUINA RODRÍGUEZ DE MADERA, ET AL., Defendants and Appellants.

No. 9744.   Argued December 9, 1948.—Decided January 18, 1949.

*Eulogio Riera* and *Rafael Rodríguez Ema* for appellants. *Fernando Ruiz Suria,* and *Brown, Newsom & Córdova* for appellee.

MR. JUSTICE SNYDER delivered the opinion of the Court.

The plaintiff owned a 49/72 undivided share in common in certain real property and Emilia Luisa Borda owned the remaining 23/72 interest. The defendants acquired the 23/72 share of Emilia Luisa Borda by virtue of a judicial sale. Thereafter the plaintiff filed this suit for legal redemption of the 23/72 interest pursuant to § 1412 of the Civil Code, 1930 ed.[1] In his complaint the plaintiff alleged that after the redemption was consummated, he would be the sole owner of the property.

The defendants moved to dismiss the complaint because it did not allege that the plaintiff bound himself not to sell for four years the share of the property redeemed, as required by par. 5 of § 1616 of the Law of Civil Procedure for Cuba and Puerto Rico.[2] The lower court held that par.

---

[1] Section 1422 provides in part that "A co-owner of a thing held in common may exercise the redemption in case the shares of all the other co-owners, or any of them, are sold to a third party."

[2] Section 1616 provides that "In order that complaints of redemption be allowed, it is required . . . 5. That the co-owners bind himself not to sell *the share of the property redeemed,* for four years." (Italics ours).

5 of § 1616 did not apply where as here the plaintiff would become the exclusive owner after redemption. Accordingly, it overruled the motion to dismiss the complaint. Subsequently, at the request of the defendants, the district court entered judgment for the plaintiff, from which the defendants appealed.

■■ This is a case of first impression. Although we have held that par. 5 of § 1616 is in force in Puerto Rico, this Court has never be required to determine if it applies to a case where the plaintiff becomes the sole owner after redemption. Cf. *Vellón* v. *Central Pasto Viejo*, 34 P.R.R. 226, and cases cited therein. And, so far as we are aware, no commentator has discussed this specific problem.

The reasoning of the lower court may be summarized as follows: The primary purpose of § 1412 is to terminate common ownership of property as soon as possible and to consolidate title thereto in a single person. But if the plaintiff must bind himself not to sell the share redeemed, common ownership might be revived. This would occur if the plaintiff, after redeeming, desired to sell the entire property within four years. He could sell only the share he now owns and would have to retain title to the interest redeemed. To require compliance with par. 5 of § 1616 here would defeat the purpose of § 1412. Consequently, par. 5 does not apply to the instant case.

On appeal, the defendants challenge the validity of this reasoning of the district court. We examine first the historical setting and purpose of par. 5 of § 1616.

Section 1412 "is designed to eliminate common ownership of property, which is usually a perennial source of discord." 4 Escriche, *Diccionario de Legislación y Jurisprudencia* 942, 1876 ed. But the legislator also envisaged the possibility that a co-owner might redeem under § 1412 for speculative purposes; *i.e.*, in order to resell at a higher price. To forestall such action, it required the redeemer prior to 1855 to swear that he desired the property for himself and

was not redeeming it for speculative purposes.    This policy against speculation by a redeemer was strengthened by § 674 of the Law of Civil Procedure for Cuba and Puerto Rico of 1855, which prohibited the redeemer from transferring the share redeemed for four years.    This prohibition was incorporated in § 1618 of the Spanish Law of Civil Procedure of 1881 and in § 1616 of the Law of Civil Procedure for Cuba and Puerto Rico of 1885.[3]

Other steps were taken to insure compliance with the restriction against transfer for four years of the share redeemed.    Section 1626 of the Law of Civil Procedure for Cuba and Puerto Rico of 1885 provided that "there shall be noted in the Registry of Property the agreement made in any of the cases 4th, 5th and 6th established in § 1616", in order to prejudice third persons.    Transfer by the redeemer, wthout the consent of the original purchaser, before expiration of the period was made null.    (Section 1628, Law of Civil Procedure for Cuba and Puerto Rico of 1885; § 690, Law of Civil Procedure for Cuba and Puerto Rico, 1855; § 1630, Spanish Code of Civil Procedure of 1881).    In addition, it was soon realized that this latter sanction was not

---

[3] "The object of these provisions is to insure that redemption takes place for the reasons provided in the statute for granting it, which essentially are to give preference over a stranger, with reference to the thing being sold, to the person who, being a descendant of the person to whom it belonged, or owning it in common with another, or having the direct and useful ownership thereof, has a greater affectionate or material interest in its purchase than a stranger. *El Fuero Real* provided in *la ley 13, tit. 10, Lib. 3°.* that the redeeming co-owner must swear that he wanted the thing for himself, and that he was not redeeming it to deprive the purchaser thereof, in order to transfer it to another person who did not have the right to redeem it and whom he wanted to favor or who had offered him a higher price for it than it was costing him to redeem. But the obligation on the part of the redeeming co-owner not to transfer the property ought not to be imposed for a longer period than necessary to accomplish the said purpose, without resulting on the other hand in the stagnation of the property. For this reason the statute limited the period of this obligation, it being more or less, according to whether transfer might be more or less prejudicial to the public interest, *in view of the fact that the indivisibility of property owner in common or the separation of useful and direct ownership resulted therefrom.*" 4 Escriche,

effective, since it was of no practical benefit to the original purchaser whose share of the property had been redeemed. 6 Manresa, *Comentarios a la Ley de Enjuiciamiento Civil Reformada*, 115, 3rd ed. The prohibition against transfer was therefore implemented by providing that if the original purchaser requested it, the redemption could be set aside if the redeemer sold the property within the prohibited period. Section 1630, Spanish Code of Civil Procedure of 1881; Manresa, *op. cit.* 115.

With this background in mind, we turn to the problem raised by this particular case; namely, whether par. 5 of § 1616 applies where the plaintiff becomes sole owner after redemption. Section 1412 establishes a formula whereby a co-owner may at his option eliminate common ownership of property or reduce the number of co-owners. From this the district court inferred that one of the purposes of § 1412 is to prevent the revival of common ownership. But it is one thing to eliminate common ownership. It is a different thing to revive, or create a new, common ownership. There is nothing in § 1412 with reference to the latter; it is directed solely to elimination or reduction of existing com-

---

*Diccionario de Legislación y Jurisprudencia* 941, 1876 ed. (Italics ours).

It was the former practice in redemption by co-owners, the origin of which must be sought in the doctrines of the commentators, that the redeemer swore that he wanted the property that he proposed to redeem for himself and not for another, and that he was not proceeding fraudulently. The Law of Civil Procedure of 1885, in regulating the procedure of this summary trial, tried to avoid the frauds which, as Ortiz de Zúñiga (*Práctica Forense*) says, arose from redemptions through lack of appropriate precautions, and then there appeared, for the first time, the prohibition against transfer of the property redeemed by the redeemer for four years. The purpose of this prohibition is self-evident: redemption was not to be deviated from its useful purpose and converted into an instrument of speculation to the damage of the purchaser." 23 Scaevola, *Comentarios al Código Civil* 874–75, 1906 ed.

"In order to avoid any attempt to use redemption by co-owners for speculation or ends outside the purpose of the law, the redeemer is also obliged as an essential requisite of the complaint, to bind himself in it not to sell the share of the ownership which he is redeeming for four years." 6 Manresa, *Comentarios a la Ley de Enjuiciamiento Civil* 108, 3rd. ed.

mon ownership. Moreover, even if we adopt the assumption of the district court that the Civil Code abhors common ownership and therefore by implication one of the objectives of § 1412 is to prevent its revival, we cannot avoid the effect of the clear and absolute terms of par. 5 of § 1616 which prohibits without qualification alienation for four years of the share redeemed.

We are unable to agree with the plaintiff that par. 5 on its face applies only when common ownership continues to exist after redemption. He relies on the italicized portions of par. 5 of § 1616 and of the quotation from Escriche in footnotes 2 and 3, respectively. But we find nothing in that language which supports his theory. In making this contention, the plaintiff also relies on 10 Manresa, *Comentarios al Código Civil* 355, 1908 ed., reading as follows:

"On the other hand, as to the purpose of such a precept, either it is not attained, or it is opposed to the spirit and tendency of the Code with respect to redemption by a co-owner which, as we have said, is to facilitate termination of indivisibility; that opposition arises from the moment when, according to the procedural statute, it is impossible for four years to sell the share redeemed to another co-owner, which would be conducive to unity of ownership."

Obviously, Manresa disapproved of par. 5 of § 1616 because it made resale impossible by a co-owner who continued to be such after redemption. But Manresa is silent on the problem of resale by a redeeming sole owner. The plaintiff reads an inference of approval of his position into the silence of Manresa. His argument is that Manresa failed to discuss this question because it never occurred to him that anyone would contend that a sole owner after redemption was inhibited by par. 5 of § 1616 from selling for four years the share redeemed. His point is that Manresa was openly opposed to the doctrine of par. 5; if he had thought it applied here, he would have discussed this situation and utilized its unjust application to strengthen his opposition to the doc-

trine. However, we find it profitless to pursue this somewhat elusive theory based on the failure of Manresa to discuss the present case. Paragraph 5 of § 1616 is clear and on its face applies herein. That is enough to decide this particular contention against the plaintiff.

The plaintiff makes another point. Despite the fact that § 1616 provides for no exceptions from its prohibition against alienation for four years, the plaintiff argues that by "legislating interstitially" we should read an exception into par. 5 in favor of a redeemer who is sole owner after redemption is consummated. Otherwise, he contends, the objective of the Civil Code of discouraging common ownership will be frustrated if the redeemer, finding himself in need of funds during the four years, sells only his original share of the property because § 1616 prohibits him from selling at that time the redeemed share.

As we have seen, Manresa deplored the fact that under certain circumstances § 1616 runs counter to the philosophy embodied in § 1412 of discouraging common ownership of property. Manresa had in mind property owned in common by $A$, $B$ and $C$. $A$ sells his share to $D$, a stranger. $B$ brings an action of redemption against $D$ in which he prevails. This reduces the number of co-owners, which is one of the objectives of the Civil Code in providing for redemption by co-owners. However, for four years the complete effectuation of the policy contemplated by § 1412 cannot be achieved, as $B$ cannot sell his entire share in the property to $C$ during that time; he can sell his own original interest, but not that redeemed from $D$.

One answer to this point is that there is nothing to prevent $B$ from purchasing $C$'s interest and thereby extinguishing the common ownership. However, a more important answer is that the policy of § 1412 is not absolute. The Legislature sought to reduce or eliminate common ownership. But it conditioned the privilege or option it gave redeemers. To avoid speculation by a redeemer, it enacted par. 5 of

§ 1616 prohibiting alienation of the redeemed share for a limited period. In the example envisaged by Manresa this prohibition blocks further reduction or elimination of common ownership of four years. But the Legislature deliberately took this course in order to safeguard the subordinate but important objective of preventing speculation through redemption.

By the same token, where as here redemption results in sole ownership, the restriction on alienation embodied in par. 5 may conceivably result in revival of common ownership under some circumstances and thereby thwart the spirit or philosophy of § 1412. If the plaintiff is forced or desires to sell within four years, he is permitted under § 1616 to sell only his original share of the property. Nevertheless, the Legislature did not establish any exception in par. 5 of § 1616 for such cases. When the Legislature felt it desirable to provide for an exception in a somewhat similar situation, it made specific provision therefor. Section 1616, par. 4, Law of Civil Procedure for Cuba and Puerto Rico of 1885.[4] It chose to defeat the policy of § 1412 occasionally in order to avoid the speculation which might result if exceptions for this or other cases were written into par. 5. The competing considerations embodied in § 1412 as against par. 5 were resolved by the Legislature against the plaintiff. It is not within the province of the courts to rewrite par. 5 of § 1616 and establish an exception which the Legislature chose to leave out of that statute.

Moreover, as we pointed out in the *Vellón* case at pp. 232-33, § 1412 is in itself a restraint on alienation. It abridges the right of a co-owner desiring to sell: a purchaser of his share may well be discouraged by the right of redemption thereof vested in the remaining co-owners. It is there-

---

[4] That paragraph, which is no longer in our Code, reads as follows: "That if the redemption is among members of a family, it is agreed that the redeemed property will be retained at least two years, unless some misfortune obliges the redeemer to sell."

fore not wholly unreasonable for the latter, who derive the benefits of the restraint on alienation by a selling co-owner, to find that they in turn are restrained for four years from speculating with the benefits they gain from § 1412.

■ The plaintiff makes an alternative contention in order to sustain the judgment of the district court. We have held that par. 5 of § 1616 is in force in Puerto Rico. *Vellón* v. *Central Pasto Viejo, supra; Martínez* v. *Pirallo*, 61 P.R.R. 87. And see *González* v. *Acha et al.*, 21 P.R.R. 124; *Llambías* v. *Pagán*, 65 P.R.R. 424, 435. The plaintiff argues that these cases were incorrectly decided and should be reversed. He would have us hold that par. 5 is not in force in Puerto Rico.

The gist of the plaintiff's argument is as follows: Despite the fact that par. 5 is included in the Law of Civil Procedure, it is a substantive rather than a procedural provision, 27 Enc.Jur.Esp. 524; 10 Manresa, *Comentarios al Código Español* 324–25, 4th ed. In view of the substantive nature of par. 5, the Legislature would have included it in our Civil Code of 1902 if it had meant to continue par. 5 in effect here. Far from continuing par. 5 in effect, the Legislature repealed it by the repealing clause of the Civil Code of 1902, which repeals not only the former Civil Code, but also "all other laws or bodies of law which directly or indirectly are in conflict" with it. As par. 5 was not included in the 1902 Civil Code, it was repealed thereby in view of its conflict therewith. Otherwise, a substantive requirement, not found in the Civil Code, would continue to subsist. This intention to repeal par. 5 was reaffirmed when the Code of Civil Procedure of 1904 was enacted without including par. 5 therein.

We are unable to agree with this contention of the plaintiff. While par. 5 is substantive in nature, the fact remains that it was included in a Law of Civil Procedure. We therefore find it difficult to believe that the Legislature intended

by the repealing clause of the Civil Code of 1902 to reach into the Law of Civil Procedure and thereby to repeal indirectly this particular provision. Rather we are of the view that § 361 of the Code of Civil Procedure, 1933 ed., is the only repealing clause which might conceivably apply here. But § 361 clearly does not repeal par. 5. It provides that "All laws, royal decrees, orders and military orders, acts, or parts of acts, inconsistent or in conflict with this Code, are hereby repealed." And par. 5 is in no way incompatible or in conflict with the provisions of the Code of Civil Procedure. The reasoning in *González* v. *Acha et al.*, *supra*, and *Mas* v. *Llona*, 31 P.R.R. 28, supports this conclusion. *Benítez* v. *Díaz*, 28 P.R.R. 628, held that one of the procedural requirements of § 1616 had been repealed by the Code of Civil Procedure of 1904. But the *Benítez* case is distinguishable precisely because our case involves a substantive provision of § 1616. We see no reason to reverse our cases holding that par. 5 is in effect in Puerto Rico.

■ Only one point remains in the case. We have held that the complaint must allege that the plaintiff binds himself not to sell for four years his share of the property redeemed. The plaintiff asks us, if we reach this conclusion, to remand the case to the district court so that he may amend his complaint by including therein such an allegation.

The defendants oppose this request on the ground that § 1414 of the Civil Code provides that "The right of legal redemption can not be exercised except within nine days, counted from the entry in the registry, and in the absence thereof from the time the redeemer may have had knowledge of the sale." But the plaintiff complied with § 1414: he filed his complaint within nine days of the sale. It is true we are holding the complaint was defective because it did not include the allegation in question. But the amended complaint will in this respect relate back to the date of the original complaint, and will be considered as having been

filed in time. The plaintiff is therefore entitled to amend his complaint on remand to include the missing allegation.[5]

The judgment of the district court will be reversed and the case remanded for further proceedings not inconsistent with this opinion.

Mr. Justice Negrón Fernández did not participate herein.

---

[5] We need not stop to determine if the Rules of Civil Procedure apply to this action. Under either Rule 15(c) or the old procedure, we would reach the same result. See *Roses* v. *Juliá*, 67 P.R.R. 485; *Sánchez* v. *Cooperativa Azucarera*, 66 P.R.R. 330; *Bithorn* v. *Santana*, 68 P.R.R. 281, as compared with *Vellón* v. *Pasto Viejo*, 37 P.R.R. 531.